UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

JOHARI T. STEWART,

               *Plaintiff*,

         -*against*-

COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

               *Defendant*.

----------------------------------X

**MEMORANDUM AND ORDER**

19-CV-1287 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

         Johari T. Stewart ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant" or "the Commissioner"), which found that plaintiff was not disabled within the meaning of the Social Security Act ("the Act") and, therefore, was not eligible for disability insurance benefits under Title II of the Act.  Plaintiff contends that she is disabled under the Act and is thus entitled to receive the aforementioned benefits.

         Presently before the court are plaintiff's motion for judgment on the pleadings, and defendant's cross-motion for judgment on the pleadings.  For the reasons herein, plaintiff's motion is GRANTED, defendant's motion is DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order.

## Background

The parties in this case have filed a joint stipulation of relevant facts, which the court incorporates by reference.  (*See generally* ECF No. 17-1, Joint Stipulation of Facts ("Stip.").)  The court will briefly recount the factual background here only to the extent such facts are relevant to the pending motions.

Plaintiff's alleged disability stems primarily from problems she has experienced with her spine.  (*See* ECF No. 18, Administrative Transcript ("Tr."), at 65.)  In July 204, after experiencing lower back pain, plaintiff underwent an MRI that showed moderate disc herniation.  (Stip. at 2.)  Plaintiff underwent a microdiscectomy, a minimally invasive back surgery, in September 2014, but continued to experience back pain after the surgery.  (*Id.* at 2-3.)  In February 2015, plaintiff underwent a second surgery, after which she continued to complain of back pain.  (*Id.* at 3.)  After continued consultation with various physicians, she underwent a third surgery in September 2015.  (*Id.* at 4.)  Plaintiff's pain did not alleviate; she rated her back pain an eight out of ten in May 2016.  (*Id.* at 6.)

One of the doctors from whom plaintiff sought treatment was Dr. Santo Terranova, D.O. ("Dr. Terranova"), a board-certified neurologist.  (*Id.*)  Plaintiff first sought

treatment from Dr. Terranova in May 2016, and she continued to do so until at least July 2018. (*See id.* at 6-9.)

## I.   Procedural History

On May 6, 2015, plaintiff filed an application for Social Security disability insurance benefits. (Tr. at 26, 65-73.) Plaintiff claimed she was disabled as a result of her lumbar neuritis and arthritis. (*Id.* at 65.) The alleged onset date of plaintiff's disability was August 16, 2014. (*Id.* at 28, 64, 150-51.)

On July 14, 2015, the Social Security Administration denied plaintiff's application. (*Id.* at 26, 64, 65-73.) On July 20, 2015, plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 26, 87-88.) On September 26, 2017, ALJ John Benson presided over plaintiff's hearing. (*Id.* at 26, 40-63.) Plaintiff appeared and testified via videoconference, and was represented at the hearing by Richard Morris, Esq. (*Id.*) Susan Howard, an impartial vocational expert, also provided testimony during the hearing. (*Id.* at 26, 40, 52-62, 245.) In a decision dated October 26, 2017, ALJ Benson concluded that plaintiff was not disabled. (*Id.* at 23-39.)

On November 1, 2017, plaintiff appealed the ALJ's decision to the Appeals Council. (*Id.* at 148.) On January 3, 2018, the Appeals Council denied review of the decision,

rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-5.) On March 5, 2019, plaintiff filed the instant action in federal court. (*See generally* ECF No. 1, Complaint.)

## II.   Relevant Medical Opinions

### A. Dr. Trimba (Consultative Examiner)

On July 8, 2015, Dr. Lyudmila Trimba, M.D. ("Dr. Trimba"), a consultative examiner, performed an internal medicine evaluation of plaintiff. (Tr. at 318-22.) Dr. Trimba noted plaintiff's complaints of a tingling sensations in her lower extremities, and that her lower back pain worsened with prolonged walking, sitting, standing, lifting, and bending. (*Id.* at 318.) Dr. Trimba opined that plaintiff appeared to be in no acute distress, though she noted plaintiff was overweight. (*Id.*) Dr. Trimba found that plaintiff's gait was normal, and she could walk on her heels and toes without difficulty. (*Id.*)

Regarding plaintiff's musculoskeletal ability, Dr. Trimba found that plaintiff had full range of motion of her cervical spine, shoulders, elbows, forearms, and wrists bilaterally, as well as her hips, knees, and ankles bilaterally. (*Id.*) Her joints were stable and nontender. (*Id.* at 321.)

Dr. Trimba diagnosed plaintiff with "[l]ower back pain, status post lumbar spine surgery [twice] in 2014 and 2015." (*Id.*) Dr. Trimba concluded that plaintiff had moderate

4

limitation in her ability to sit, stand, and walk for a prolonged time. (*Id.*) She also opined that plaintiff had moderate limitations in her ability to climb steps, push, pull or carry heavy objects, and that plaintiff should avoid frequent bending. (*Id.*)

### B. Dr. Bijpuria (State Agency Medical Consultant)

On July 13, 2017, Dr. M. Bijpuria, M.D. ("Dr. Bijpuria"), a general surgeon working as a consultant for a state agency, reviewed all the medical evidence in the record through May 22, 2017. (*Id.* at 619-30.) Dr. Bijpuria concluded that plaintiff could sit for six hours and stand or walk for two hours in an eight-hour workday. (*Id.* at 624.) He also found that plaintiff could lift and carry ten pounds. (*Id.*) Dr. Bijpuria opined that plaintiff was limited to never climbing ladders, ropes, or scaffolds, and only occasionally could climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. (*Id.* at 625.) Lastly, Dr. Bijpuria noted that Dr. Trimba's opinions were unsupported by the objective clinical findings or longitudinal treatment records, because her findings were based on plaintiff's subjective statements, and she did not treat plaintiff for her impairments. (*Id.* at 629.)

### C. Dr. Terranova (Treating Physician)

On August 12, 2017, Dr. Terranova, one of plaintiff's treating physicians, completed a Physical Medical Source

Statement in connection with Plaintiff's application for benefits. (*See id.* at 663-66.)  Dr. Terranova listed plaintiff's diagnosis as lumbar neuritis, and opined that the prognosis was chronic, and long-term. (*Id.* at 663.)  Dr. Terranova described plaintiff's symptoms as severe lumbar pain, which was exacerbated by standing, right leg pain, muscle spasms, neuropathy, and chronic pain. (*Id.*)  He also reported that plaintiff could not bend at the waist, carry, or lift. (*Id.*)  Dr. Terranova opined that plaintiff could sit for five minutes and stand for fifteen minutes, and that plaintiff's leg must be elevated with prolonged sitting. (*Id.* at 663, 665.)  He also concluded that plaintiff could never lift or carry, twist, stoop, crouch, squat, climb stairs, or climb ladders. (*Id.* at 665.)  Dr. Terranova further opined that plaintiff had significant limitations in reaching, handling, and fingering. (*Id.*)  He concluded plaintiff could not work due to her condition. (*Id.* at 664-65.)

## Legal Standard

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  A

district court, reviewing the final decision of the Commissioner, must determine whether the correct legal standards were applied, and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. *Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is 'more than a mere scintilla,'" and must be relevant evidence that a "'reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 420 U.S. 389, 401 (1971)).  If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld.  42 U.S.C. § 405(g).  Inquiry into legal error requires the court to ask whether the plaintiff has "had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 10 (2d Cir. 1990) (second alteration in original)).  The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it

might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). A claimant is disabled under the Act when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do her previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's

definition of disability.  *See* 20 C.F.R. § 404.1520.  This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he [or she] has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his [or her] prior type of work, the Commissioner must find him [or her] disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (quotation and citation omitted); *see also* 20 C.F.R. § 404.152(a)(4).

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits."  20 C.F.R. § 404.1523.  Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process.  20 C.F.R. § 416.945(a)(2).  In steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128.  At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's residual functional capacity ("RFC"), age, education, and work

experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, a court reviewing final decisions of the Commissioner is explicitly authorized to order further proceedings when appropriate. 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39.

## Discussion

### I.  The ALJ's Disability Determination

Using the five-step sequential process to determine whether a claimant is disabled as mandated by the regulations, the ALJ determined at step one that plaintiff had not engaged in substantial gainful activity during the relevant period. (Tr. at 28.)

At step two, the ALJ found that plaintiff suffered from lumbar neuritis. (*Id.* at 28.) The ALJ also took note of plaintiff's non-severe conditions: hypertension, hyperlipidemia, and obesity. (*Id.* at 28-29.) Plaintiff was also diagnosed with anemia, and associated fatigue, which the ALJ concluded was a "longstanding condition that did not interfere with her ability to work." (*Id.* at 29.)

At step three, the ALJ found that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled the medical severity of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ evaluated plaintiff's impairments under listing 1.04 (disorders of the spine). (*Id.*)

The ALJ determined that plaintiff had the RFC to perform sedentary work. (*Id.* at 30.) The ALJ found that plaintiff required the option to alternate between sitting and standing, at forty-five-minute intervals, and to remain in the new position for three minutes before returning to the previous position. (*Id.*) The ALJ found that while plaintiff's impairments could reasonably be expected to cause her alleged symptoms, plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the rest of the evidence. (*Id.* at 31.)

11

In arriving at the RFC determination, the ALJ gave "great weight" to Dr. Bijpuria, the non-examining medical consultant who reviewed the evidence in the record. (*Id.* at 32.) The ALJ explained that the opinion was entitled to great weight because it was "well supported by the longitudinal record," and Dr. Bijpuria was "an acceptable medical source with knowledge of the disability program and access to the substantive record." (*Id.*) The ALJ afforded "partial weight" to the medical opinion of Dr. Trimba, one of the consultative examiners, finding that her opinion that plaintiff had "moderate limitations" was made on the basis of a one-time assessment, and that "the limitations cited [by Dr. Trimba] were somewhat vague." (*Id.*) The ALJ gave the opinion of Dr. Terranova, a treating physician, "little weight," on the ground that his findings were generally inconsistent with the contemporaneous progress notes and "longitudinal exam findings." (*Id.* at 32-33.) The ALJ found that "Dr. Terranova [did] not cite any findings that [were] consistent [with] extreme limitations in his opinion." (*Id.* at 33.)

At step four, the ALJ concluded that plaintiff was not able to perform her past relevant work as a "laborer, stores" because the demands of her past job, which required "medium exertion level," exceeded plaintiff's RFC. (*Id.*)

Lastly, at step five, the ALJ determined that there were jobs available in large numbers in the national economy that plaintiff could perform. (*Id.* at 34.) The vocational expert, provided with plaintiff's age, education, work experience, and RFC, testified that plaintiff could perform the requirements of jobs such as a call out operator, an order clerk (food and beverage), and a touch up screener. (*Id.*)

Thus, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. (*Id.*)

## II.  Weighing of the Medical Opinion Evidence

Plaintiff first contends that the ALJ erred in assigning little weight to the opinion of Dr. Terranova, one of plaintiff's treating physicians. (ECF No. 14, Plaintiff's Memorandum of Law ("Pl. Mem."), at 1-2.)

Under the regulations in place at the time plaintiff filed her claim, the ALJ was to "defer 'to the views of the physician who has engaged in the primary treatment of the claimant.'" *Cichocki v. Astrue*, 534 F. Appx. 71, 74 (2d Cir. 2013) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)).[1] "However, '[a] treating physician's statement that

---

[1] The Commissioner has revised its rules to eliminate the treating physician rule, and ALJs are now to weigh all medical evaluations, regardless of their sources, based on how well supported they are and their consistency with the remainder of the record. *See* 20 C.F.R. §§ 404.1520b; 416.920c. Claims filed before March 27, 2017, however, are still subject to the treating physician rule. *See* 20 C.F.R. § 404.1527(c)(2). Plaintiff filed her claim on May 6, 2015.

the claimant is disabled cannot itself be determinative.'"  *Id.*
(quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).
"Rather, 'a treating source's opinion on the issue(s) of the
nature and severity of [a claimant's] impairment(s)' will be
given 'controlling weight' if the opinion is 'well-supported by
medically acceptable clinical and laboratory diagnostic
techniques and is not inconsistent with the other substantial
evidence in [the claimant's] case record.'"  *Id.* (quoting 20
C.F.R. § 404.1527(c)(2)); *see also Burgess*, 537 F.3d at 128
(describing this principle as the "treating physician" rule).  A
treating source is defined as a plaintiff's "own physician,
psychologist, or other acceptable medical source" who has
provided plaintiff "with medical treatment or evaluation and who
has, or has had, an ongoing treatment relationship with [the
plaintiff]."  20 C.F.R. § 404.1502; *see also Bailey v. Astrue*,
815 F. Supp. 2d 590, 597 (E.D.N.Y. 2011) ("A treating source's
medical opinion on the nature and severity of an impairment is
given controlling weight when it is supported by medically
acceptable clinical and laboratory diagnostic techniques and is
not inconsistent with other substantial evidence in the
record.").  Medically acceptable clinical and laboratory

---

Accordingly, the court applies the treating physician rule in the
instant case.  *See, e.g.*, *Conetta v. Berryhill*, 365 F. Supp. 3d 383,
395 n.5 (S.D.N.Y. 2019).

diagnostic techniques include consideration of a "patient's report of complaints, or history, [as] an essential diagnostic tool." *Green–Younger*, 335 F.3d at 107.

When a treating physician's opinion is not afforded controlling weight, the ALJ must "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33; *see also* 20 C.F.R. § 416.927(c)(2) (requiring the Commissioner to "always give good reasons in [its] notice of determination or decision for the weight [given to a] treating source's medical opinion"). The Commissioner's regulations enumerate several factors that may guide an ALJ's determination of what weight to give to a treating source's opinion: (1) the length, frequency, nature, and extent of the treating relationship, (2) the supportability of the treating source opinion, (3) the consistency of the opinion with the rest of the record, (4) the specialization of the treating physician, and (5) any other relevant factors. 20 C.F.R. § 416.927(c)(2)-(6). The ALJ is not required to cite each factor explicitly in the decision, but must ensure he applies the substance of the rule. *Halloran*, 362 F.3d at 32.

Here, the ALJ gave "little weight" to the medical opinion of Dr. Terranova, one of plaintiff's treating physicians. (Tr. at 32.) In discussing the weight assigned to Dr. Terranova's opinion, the ALJ found that "[t]he opinion [was]

15

inconsistent with the longitudinal exam findings," because "physical exam findings in March through August 2017 [were] not supportive of the extreme postural limitation indicated by [Dr. Terranova's] onion." (*Id.* at 32-33.) While the ALJ recognized that Dr. Terranova "noted lumbar tenderness as a positive finding in his most recent physical exam [was] not unexpected given the claimant's medical history," the ALJ found that "[o]verall, . . . Dr. Terranova [did] not cite any findings that are consistent with [the] extreme limitations in his opinion." (*Id.* at 33.)

The ALJ's cursory dismissal of Dr. Terranova's opinion violated the treating physician rule. Plaintiff sought treatment from Dr. Terranova on at least five separate occasions in 2016 and 2017, before Dr. Terranova provided the medical opinion in question in August 2017. (*See* Stip. at 6-8.) Yet, there is no indication that the ALJ considered the length or nature of Dr. Terranova's relationship with plaintiff, or Dr. Terranova's specialization as a neurologist. *See* 20 C.F.R. § 416.927(c)(2), (5). Instead, the ALJ assigned less weight to Dr. Terranova's opinion than he did to the opinion of Dr. Trimba, a consultative examiner, even though the ALJ noted that the "the limitations cited [by Dr. Trimba] were somewhat vague." And the ALJ assigned even more weight to the opinions of Dr. Bijpuria, who never examined plaintiff.

16

The Commissioner argues that remand is not warranted if the court merely disagrees with the ALJ's reasons for discounting Dr. Terranova's opinion, so long as the ALJ's decision was still supported by substantial evidence.  (ECF No. 16, Defendants' Memorandum of Law, at 7-8.)  But the court does not merely disagree with the ALJ's reasoning.  Rather, the court cannot find that the ALJ's decision was supported by substantial evidence where the ALJ, without providing sufficiently good reasons, relied more heavily on the opinions of a non-examining physician and a consultative examiner than the opinion of a treating physician, particularly where the applicable regulations required affording a treating physician's opinion controlling weight as long as it was well-supported by medically acceptable clinical and laboratory diagnostic techniques, and was not inconsistent with the other substantial evidence in the record.  *See* 20 C.F.R. § 404.1527(c)(2); *see also Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012) (the Second Circuit has "consistently held that the failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand").  Dr. Terranova indicated that his opinion was based on an MRI and a neurological exam.  (Tr. at 663.)

On remand, if the ALJ assigns Dr. Terranova's opinion less than controlling weight, the ALJ must provide sufficiently

"good reasons" for doing so, supported by citations to and explanations of any evidence that the ALJ perceives as contradicting the opinion.  The ALJ is reminded that if he perceives any gaps in the opinion of a treating physician, "the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly." *Hartnett v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998).

In addition, if the ALJ assigns Dr. Terranova's opinion less than controlling weight, the ALJ should consider whether Dr. Terranova's opinion is entitled to more weight than that of the consultative examiner.  *See Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) ("ALJs should not rely heavily on the findings of consultative physicians after a single examination.").  The ALJ should also carefully consider whether it was appropriate to afford more weight to the opinion of a non-examining physician, who only reviewed part of the record. *See Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d Cir. 1987) ("A corollary to the treating physician rule is that the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis.").

**III.   Evaluation of Plaintiff's Testimony**

Plaintiff also avers that the ALJ erroneously dismissed her subjective statements about her condition.  (Pl. Mem. at 7-8.)

The regulations provide a two-step framework for evaluating a claimant's subjective symptoms for the RFC analysis: (1) the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that can be reasonably expected to produce the claimant's pain or other symptoms; and (2) the ALJ must then evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functionality by examining the objective medical evidence. 20 C.F.R. §§ 404.1529(b), SSR 16-3p; *see Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010) (finding that before the ALJ can make an adverse credibility finding as to plaintiff's testimony, the ALJ should consider "all of the relevant medical and other evidence").  At the second step, an ALJ must consider relevant the following factors:

> (i) the claimant's "daily activities"; (ii) "[t]he location, duration, frequency, and intensity of [the claimant's] pain or other symptoms"; (iii) "[p]recipitating and aggravating factors"; (iv) "[t]he type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms"; (v) "[t]reatment, other than medication, . . . received for relief of your pain or other symptoms"; (vi)

19

"[a]ny measures . . . used to relieve . . . pain or
other symptoms; and (vii) "[o]ther factors
concerning [claimaint's] functional limitations
and restrictions due to pain or other symptoms."

20 C.F.R. § 404.1529(c)(3); *see Valet v. Astrue*, No. 10- CV-
3282, 2012 WL 194970, at *22 (E.D.N.Y. Jan. 23, 2012) (remanding
where the ALJ "considered some, but not all of the mandatory"
factors).

Here, the ALJ found that plaintiff's "medically
determinable impairment could reasonably be expected to cause
some of the alleged symptoms; however, [plaintiff's] statements
concerning the intensity, persistence and limiting effects of
these symptoms [was] not entirely consistent with the medical
evidence and other evidence in the record . . . ." (Tr. at 31.)

"If the ALJ rejects plaintiff's testimony after
considering the objective medical evidence and any other factors
deemed relevant, he must explain that decision with sufficient
specificity to permit a reviewing court to decide whether there
are legitimate reasons for the ALJ's disbelief." *Fernandez v.
Astrue*, No. 11-cv-3896, 2013 WL 1291284, at *18 (E.D.N.Y. Mar.
28, 2013) (quoting *Correale-Englehart v. Astrue*, 687 F. Supp. 2d
396, 435 (S.D.N.Y. 2010)). The ALJ's boilerplate finding that
plaintiff's testimony regarding her symptoms was "not entirely
consistent" with the record is not a sufficient explanation of
why her testimony was discounted. *See Castano v. Astrue*, 650

F.Supp.2d 270, 279 (E.D.N.Y. 2009) ("The ALJ's invocation of the boilerplate phrase 'not entirely credible' to reject plaintiff's complaints is, frankly, not entirely credible."). In doing so, the ALJ did not point to specific evidence that contradicted plaintiff's testimony about her symptoms. *See Bradley v. Colvin*, 110 F. Supp. 3d 429, 445 (E.D.N.Y. 2015) (ALJ erred by failing to "identify the specific evidence in the record contradicting [the plaintiff's testimony").

On remand, if the ALJ disregards a portion of plaintiff's testimony, the ALJ must cite evidence in the record that contradicts her testimony, and consider each of the factors set forth in the regulations for evaluating subjective testimony.

## Conclusion

The court finds that the ALJ violated the treating physician rule and improperly discounted the plaintiff's subjective testimony without setting forth his rationale. Taken together, the court finds that the ALJ's decision was not supported by substantial evidence. Accordingly, plaintiff's motion for judgment on the pleadings is GRANTED, defendant's cross-motion for judgment on the pleadings is DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order. The Clerk of Court is respectfully

directed to enter judgment in favor of plaintiff and close this
case.

**SO ORDERED.**

Dated:      Brooklyn, New York
            August 20, 2020

                                    _____/s/_____
                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge